IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RODNEY HOJNOWSKI,** | : | **Civil Action No. 13-5618** |
| **Plaintiff,** | : | |
| **v.** | : | |
| | : | |
| **BERKS COUNTY, et al.,** | : | |
| **Defendants.** | : | |
| | : | |

<u>**MEMORANDUM OPINION**</u>

**Rufe, J.**                                                                     **February 23, 2016**

Plaintiff filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against the Spring Township and Township employees Chief Bryan D. Ross, Detective Stephen Brock, Detective Robert Long, Officer Jarrod Schappell, and Officer Nathan Getz ("Spring Township Defendants") and against Berks County and the Berks County Sheriff Eric J. Weaknecht ("Berks County Defendants").[1] Plaintiff also asserts state law claims for assault and battery against two of the individual Spring Township employees, Detective Brock and Officer Schappell. Before the Court are Motions for Summary Judgment filed by the Spring Township Defendants and the Berks County Defendants.

**I.   BACKGROUND**

For purposes of summary judgment, the following facts are undisputed. On March 20, 2012, the Spring Township Police attempted to arrest Plaintiff, pursuant to an arrest warrant, for violation of parole. His parole was related to a 2006 conviction. Detective Brock received information that Plaintiff was at 3995 Pennsylvania Avenue, Sinking Spring, Pennsylvania, and that he was driving a 2011 Dodge Avenger (black). Plaintiff was staying at that address, the

---

[1] Although the Complaint also listed as a defendant Berks County Deputy Sheriff "John Doe," Plaintiff has not identified or served the "John Doe" defendant. As more than 120 days have passed since the filing of the Complaint, and as the parties have completed discovery in this case, the Court will dismiss the claims against Berks County Deputy Sheriff "John Doe" without prejudice, pursuant to Rule 4(m).

home of a friend, rather than at his own residence, because he was "absconding from state parole authorities."[2] Detectives Brock and Long set up surveillance where they could view the front of 3995 Pennsylvania Avenue and the car. They identified Plaintiff when he left the building. Plaintiff drove away, and shortly thereafter, Officer Schappell initiated a traffic stop in a marked police car. Plaintiff initially pulled to the side of the road. While he was pulling over, Detectives Brock and Long arrived in two unmarked police vehicles, and Officer Getz arrived in a second marked police car. Two police cars (one marked and one unmarked) stopped behind Plaintiff's stopped car, and two others (also one marked and one unmarked) stopped in front of Plaintiff's vehicle.

When Officer Schappell stepped out of his car and walked towards Plaintiff's car, Plaintiff began to flee the scene by making a u-turn. In a statement to the state police, Officer Schappell stated that Plaintiff was driving directly towards Detective Brock, who was on foot, and Detective Brock fired his service weapon twice towards Plaintiff's car.[3] Plaintiff then drove toward Office Schappell, who was also outside his vehicle. Believing he would be hit or pinned against his patrol car, Officer Schappell stepped to the side and fired his service weapon twice. One of the shots struck Plaintiff in the back, behind his left armpit. According to the Spring Township Defendants, both Officer Schappell and Detective Brock knew that Plaintiff had been involved in incidents involving handguns, and that he had been in possession of a bulletproof vest at one time.

Plaintiff has asserted that the officers were never directly in the path of his car. However, at a hearing before the Honorable Thomas G. Parisi in the Court of Common Pleas of Berk County on May 13, 2013, Hojnowski admitted that he placed the officers in danger of death or

---

[2] Doc. No. 74-1 at 32, Pl.'s Decl. in Opp. to Def. Township of Spring's Mot. for Summ. J., ¶2.

[3] Doc. No. 61, Exh. 3.

serious injury in his attempt to flee.[4] He pled guilty to: 1) flight to avoid apprehension, trial, or punishment; 2) recklessly endangering another person; 3) fleeing or attempting to elude a police officer; and 4) possession of a controlled substance, specifically cocaine.[5]

After being shot, Plaintiff continued to drive away, and the officers pursued him in their vehicles. After a pursuit, Plaintiff pulled over in front of 2049 Cleveland Avenue, his grandparents' home, where Plaintiff resided. He stepped out of his car, and removed his shirt to show the officers he had been shot. He was handcuffed by Officer Getz, and left lying on the sidewalk for a few minutes while the officers secured the occupants of 2049 Cleveland Avenue (Plaintiff's father and elderly grandparents).[6] Three or four minutes later, Sergeant Van Etten arrived on the scene and immediately provided first aid, attempting to stop the bleeding. An ambulance arrived shortly thereafter, and Plaintiff was taken directly to Reading Hospital, where he underwent emergency surgery for a collapsed lung and fractured ribs. He remained in the hospital from March 20, 2012 until March 25, 2012.

Plaintiff was discharged from the hospital on March 25, 2012, at approximately 2 p.m., into the custody of the Berks County Sheriff's Department. Before he was discharged, he was given a dose of pain medication, and a prescription to obtain additional pain medications (Lidoderm, Oxycodone, and Tylenol). The Oxycodone and Tylenol could be taken every 4 hours for pain. His discharge papers recommended that his bandages be changed the next day. From the hospital, he was transported directly to Berks County Central Booking. There, he was held, shackled at the legs, and with his hands handcuffed to a chain around his waist, in a holding cell, while awaiting transportation to the Berks County Prison. All other detainees were similarly

---

[4] Doc. No. 61, Exh. 2.

[5] *Id.*

[6] There were also young children present in the home, as the grandmother was babysitting.

restrained. By 6 or 7 p.m., the pain medication he had been given at the hospital had worn off. Over the next several hours, he notified two or three Berks County employees that he was in pain and needed pain medication. The individuals to whom he complained did not arrange for any medical evaluation or treatment.

He was not seen by Berks County medical staff until he arrived at the Berks County Prison at approximately 3 a.m. on March 26, 2012, approximately 13 hours after being released from the hospital. His bandages were immediately changed, but he was not provided with pain medication until approximately 9 a.m.

On September 25, 2013, Plaintiff initiated this lawsuit. His Complaint asserted constitutional and state law claims against the Spring Township Defendants and constitutional claims against the Berks County Defendants. Both the Spring Township Defendants and the Berks County defendants filed motions to dismiss. Because the Spring Township Defendants' motion asked the Court to consider documents outside the pleadings which could not be considered without converting the motion to a motion for summary judgment, the Court determined that its ruling on the Spring Township Defendants' motion should await the development of a complete factual record. Therefore, the Court denied the Spring Township motion without prejudice and without reaching the merits. The Court reached the merits of the Berks County Defendants' motion to dismiss, however. The Court dismissed certain claims against the Berks County Defendants but allowed Plaintiff to proceed with his deliberate indifference/failure to render medical aid claims against Berks County arising from the events of March 25-26, 2012, when he was transported from the hospital to Berks County Central Booking.

## II.   LEGAL STANDARDS

### A.   Summary Judgment Standard of Review

Summary judgment is appropriate if "the materials in the record" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[8] A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."[9] In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[10] Further, a court may not weigh the evidence or make credibility determinations.[11] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[12] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[13] This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[14] Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[15]

---

[7] Fed. R. Civ. P. 56(a), (c)(1).

[8] *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

[9] *Id.*

[10] *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[11] *Boyle v. Cty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

[12] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[13] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

[14] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir. 1976)).

[15] *Celotex*, 477 U.S. at 322; *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

B.   <u>Qualified Immunity</u>

The defense of qualified immunity is available to governmental officials when they are sued in their individual capacity. Qualified immunity shields officers from suit (not just liability) when their actions do not constitute constitutional violations, and also shields officers from suit for actions "that, even if constitutionally deficient, reasonably misapprehend[] the law governing the circumstances [he] confronted."[16] Thus, to overcome a presumption of qualified immunity, a plaintiff must establish: 1) that an official violated a statutory or constitutional right; and 2) that the right allegedly violated was clearly established at the time (i.e. it would be clear to a reasonable officer that his conduct was unlawful under the circumstances).[17]

C.   <u>*Monell* Claims</u>

There is no *respondeat superior* liability under § 1983.[18] Thus, to hold a county or township (or a policy maker for that entity) liable for the actions of employees, Plaintiff needs to establish that his constitutional rights were violated by those employees. Then, to establish a political subdivision's liability on the basis that it maintained a policy or practice which led to the constitutional injury, Plaintiff would need to:"(1) identify a policy or custom that deprived [him] of a federally protected right, (2) demonstrate that the [township or county], by its deliberate conduct, acted as the 'moving force' behind the alleged deprivation, and (3) establish a direct causal link between the policy or custom and the plaintiff's injury."[19]

In limited circumstances, a township can also be held liable for failure to train its employees. However, the failure to train must demonstrate a deliberate indifference to an

---

[16] *Brosseau v. Haugen*, 125 S. Ct. 596, 598 (2004).

[17] *Id.*

[18] *Rizzo v. Goode*, 424 U.S. 362, 377 (1978).

[19] *Torres v. City of Allentown*, No. 07-0934, 2008 WL 2600314, at * 4 (E.D. Pa. Oct. 31, 2013) (internal quotation marks omitted) (citing *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).

obvious need for training in order to prevent constitutional violations.[20] An allegation of "inadequacy of police training" can form the basis of liability under 42 U.S.C. § 1983 "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."[21] Generally, a Plaintiff needs to point to a pattern of violations, not a single incident, to establish a township's liability for failure to train its police force. However, in a narrow range of circumstances, "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations."[22] A plaintiff must do more than put forth evidence that a particular officer did not comply with the municipalities protocol to establish liability. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. . . . [And furthermore], adequately trained officers occasionally make mistakes; the fact that they do so says little about the training program or the legal basis for holding the city liable."[23]

## III.   DISCUSSION

### A.   Spring Township Defendants

In Count I, Plaintiff alleges a claim for excessive force by Defendants Brock and Schappell, and a *Monell* claim against Chief Ross and the Township based upon the use of excessive force. Count I also asserts state law claims for assault and battery against Defendants Brock and Schappell. Count II alleges that Detective Long failed to intervene when fellow officers were using excessive force. Count III asserts a negligence claim and a deliberate

---

[20] *Id.* at 392.

[21] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

[22] *See, e.g.*, *Connick v. Thompson*, 131 S. Ct. 1350, 1361 (2011).

[23] *Id.* at 391.

indifference claim against Officer Getz for failure to promptly render medical aid, and also asserts *Monell* claims against Chief Ross and the Township for the alleged constitutional injury.

The Spring Township Defendants have moved for summary judgment, arguing that the officers' use of force was reasonable under the circumstances presented, and that medical aid was promptly provided. They also argue that the individual defendants are entitled to qualified immunity. Finally, they argue that the Police Chief and Township cannot be held liable for any constitutional violations by the officers, as the alleged constitutional deprivation was not pursuant to any policy, practice, or custom of the Township or the police department.

    1.    <u>Federal Claims Against the Individual Officers in their Official Capacities</u>

When a government official is sued in his official capacity, the suit "generally represents only another way of pleading an action against an entity of which an officer is an agent."[24] Plaintiff agrees that his claims against Defendants Ross, Brock, Long, Schappell, and Getz in their official capacities must be dismissed.[25] The Court, then, turns its attention to the claims against the officers in their individual capacities, and the claims against the Township.

    2.    <u>Excessive Force Claims (Count I)</u>

        a.    <u>Deprivation of a Federally Protected Right</u>

The Fourth Amendment prohibits the use of excessive force in the context of an arrest.[26] Looking at the totality of the circumstances, and bearing in mind the fact that police officers often must make split-second decisions in tense and uncertain circumstances, the amount of force used to make an arrest must be objectively reasonable.[27] In assessing whether the use of deadly

---

[24] *Monell v. New York City Dept. of Soc. Servs.,* 436 U.S. 658, 690 n. 55 (1978).

[25] Doc. No. 74-1 at 43, Plaintiff's Resp. to Spring Township Def.'s Mot. for Summ. J.

[26] *Graham v. Conner*, 490 U.S. 386, 394 (1989).

[27] *Id.* at 396-97.

force is objectively reasonable, the Court may consider the severity of the crime at issue (in this case, a parole violation), whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest.[28] "Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force."[29]

In this case, after initially pulling over and stopping for the police, Plaintiff made an illegal u-turn and began to flee, without regard to the fact that his car was surrounded by four police cars, and that police officers were approaching his car on foot. Defendants assert that they fired their weapons because Plaintiff was driving straight towards them, while he was attempting to flee the scene and avoid arrest. They felt they or others were in immediate danger, both based on the present circumstances, and based upon Plaintiff's history with firearms, which was known to them. Even after four shots were fired at his vehicle, Plaintiff left the scene at a high rate of speed (up to 50 miles per hour, according to Plaintiff), and he admits to violating traffic laws, including ignoring stop signs, as he drove away.[30] Thus, he continued to put the lives of innocent bystanders at risk, even after he was shot. Although Plaintiff now challenges the officers' assertion that they were in immediate danger, asserting that they had moved out of the path of danger before firing,[31] Plaintiff pled guilty to reckless endangerment in a state court proceeding. Because the evidence, even viewed in the light most favorable to Plaintiff, indicates that Plaintiff

---

[28] *Id.* at 396.

[29] *Brosseau v. Haugen*, 125 S. Ct. 596, 598 (2004); *see also*, *Scott v. Harris*, 550 U.S. 372, 386 (2007) (holding that police officer's attempt to terminate a chase by pushing his bumper against the rear of plaintiff's bumper and forcing him off the road was objectively reasonable); *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2022 (2014) (holding that police officers used reasonable force when they fired 12 shots at the plaintiff's escaping car, after plaintiff collided with police cars and then resumed his escape attempt).

[30] Doc. No. 74-1 at 34, Pl.'s Decl. in Opp. to Def. Township of Spring's Mot. for Summ. J., ¶ 14.

[31] Doc. No. 74-1 at 37-38, Pl.'s Statement of Disputed Factual Issues, ¶ 1-3.

posed an immediate threat of danger to any officers or civilians in his path, and he does not

dispute that he was actively attempting to evade arrest despite the presence of four police cars

and multiple officers in vehicles and on foot, the force used was reasonable as a matter of law,

and there are no material issues of fact for trial.

      b.    Qualified Immunity

The doctrine of qualified immunity provides an alternative basis for dismissing the

excessive force claims against Spring Township defendants Brock and Schappell. In an

excessive force case, qualified immunity protects officers operating on the "sometimes 'hazy

border between excessive and acceptable force.'"[32] In circumstances very similar to those before

the Court here, the Supreme Court found that the applicable case law "by no means clearly

establish[ed] that [the officer's] conduct violated the Fourth Amendment."[33]

      c.    *Monell* Claims

There is no *respondeat superior* liability under § 1983.[34] Thus, to hold Spring Township

or its Sheriff liable for the actions of its employees, Plaintiff must put forth evidence that his

constitutional rights were violated by the Spring Township officers, *and* evidence that the

officers acted pursuant to some policy or custom, or that the Township or Sheriff failed to

properly train its officers in the use of deadly force. Here, the Court found, as a matter of law,

that Defendants Brock and Schappell did not violate Plaintiff's Fourth Amendment rights in

effectuating the arrest. As Plaintiff's constitutional rights were not violated by the Township

employees, the *Monell* claims against the Police Chief and the Township for excessive force

---

[32] *Id.* at 599 (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001).

[33] *Id.* at 600.

[34] *Rizzo v. Goode*, 424 U.S. 362, 377 (1978).

must be dismissed.[35]

### 3.    State Law Claims for Assault and Battery

Plaintiff also asserts state law claims for assault and battery against Brock and Schappell, stemming from those officers' use of potentially lethal force during his arrest. Under Pennsylvania's Political Subdivision Tort Claims Act, municipal defendants and their employees are provided immunity from state law tort claims, subject to certain exceptions.[36] An individual's immunity may be lost if "it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice, or willful misconduct."[37]

The Pennsylvania Supreme Court has held that when a police officer is alleged to have committed an intentional tort, tort liability will not attach unless there is a determination that the officer: 1) committed the acts in question; and 2) that it doing so he willfully went beyond the bounds of the law.[38] Because police officers are authorized to use reasonable force to make an arrest, the use of such force as is necessary or reasonable under the circumstances is within the bounds of the law and cannot constitute assault and battery.[39] The Court has found no issue of material fact as to whether the officer's use of force was reasonable under the circumstances in

---

[35] In addition, Plaintiff has failed to identify any policy or custom to which the use of excessive force in this case could be attributed. Thus, under a policy or practice theory of liability, Plaintiff's claims against the Township would fail even if the Court were to find an issue of material fact as to whether the officers violated his constitutional rights.

It is not clear that Plaintiff's complaint asserted a failure to train theory of liability. To the extent that Plaintiff intended to assert a claim for failure to adequately train its employees regarding the use of deadly force, it would fail even if the evidence supported a conclusion that the officers' decisions to fire their weapons crossed the line between justified and excessive force. Given the quickly evolving circumstances and the absence of bright line rules to govern such situations, the Court cannot infer from the record that the Township failed to provide its officers with adequate training on the use of deadly force. Additionally, Plaintiff has failed to point to any evidence from which the Court could infer that Spring Township was on notice, prior to this shooting, that the training it was providing its officers with regard to the use of deadly force was inadequate. Accordingly, the *Monell* claims must be dismissed.

[36] 42 Pa. C.S. § 8541 et seq.

[37] 42 Pa. C.S. § 8550.

[38] *Renk v. City of Pittsburgh*, 641 A. 2d 289, 293-94 (Pa. 1994).

[39] *Renk,* 641 A. 2d at 293; *DeBellis v. Kulp*, 166 F. Supp. 2d 255, 279 (E.D. Pa. 2001).

this case. Accordingly, the officers are immune from tort liability under Pennsylvania law.

     4.      <u>Failure to Intervene Claim (Count II)</u>

Count II, alleging that Detective Long failed to intervene when his fellow officers were using excessive force, must also be dismissed. He was under no duty to intervene if the actions of his fellow officers were objectively reasonable under the totality of the circumstances, as the Court has held. Furthermore, Plaintiff has failed to put forth any evidence suggesting that Detective Long had a realistic opportunity to intervene before the shots were fired.[40] Accordingly, Count II will be dismissed with prejudice.

     5.      <u>Failure to Promptly Provide Medical Aid Claim (Count III)</u>

         a.      <u>Deprivation of a Federally Protected Right</u>

Plaintiff has also alleged that Officer Getz failed to promptly render medical aid after Plaintiff stepped out of his car and was placed under arrest, instead opting to assist the other officers on the scene as they secured the adjacent house. The Supreme Court has interpreted the Fourteenth Amendment due process clause to require the relevant government entity "to provide medical care to persons. . . who have been injured while being apprehended by the police."[41] To support a claim for unconstitutional deprivation of medical care under the Fourteenth Amendment, a Plaintiff must put forth evidence of: 1) a serious medical need; and 2) some act or omission by the officials that indicates deliberate indifference to that medical need.[42] A serious medical need is one which "is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[43] "Deliberate indifference is a subjective standard of liability consistent

---

[40] *Stewart v. Moll*, 717 F. Supp. 2d 454, 462 (E.D. Pa. 2010).

[41] *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).

[42] *Natale v. Camden County Correctional Facility*, 318 F. 3d 575, 582 (3d Cir. 2003).

[43] *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F. 2d 326, 347 (3d Cir. 1987).

with recklessness as that term is defined in criminal law. . . . to survive a summary judgment motion on this issue, [plaintiff] must point to some evidence" that Getz was aware that even a minor delay in the provision of medical treatment would result in an excessive risk to Plaintiff's health or safety.[44]

Plaintiff has put forth evidence that he immediately removed his shirt after exiting his car, so that the police officers could see that he had been shot in the upper torso. Defendant Getz, and the other police officers who had been pursuing him, did not immediately provide first aid, but instead entered the nearby home to secure it. Plaintiff was left on the sidewalk until backup arrived. There is an issue of material fact as to whether, under the circumstances, leaving Plaintiff alone on the sidewalk for a brief time manifested deliberate indifference to his serious medical condition.

b.      Qualified Immunity

The Court holds that the duty to provide medical care to persons injured during an arrest was a clearly established duty at the time of this incident, and it was also a clearly established principle that the delay of medical treatment for non-medical reasons was unconstitutional.[45] However, the jury must decide whether Officer Getz was deliberately indifferent to a serious medical need. As there are issues of fact for the jury, the Court cannot grant summary judgment in favor of Officer Getz on the basis of qualified immunity at this stage of the litigation.

c.      *Monell* Claim

The Court must then determine whether Spring Township can be held liable should a jury find that Officer Getz violated Plaintiff's constitutional rights. As discussed above, Spring

---

[44] *Natale*, 318 F. 3d at 582 (internal quotations and citations omitted).

[45] *City of Revere*, 463 U.S. at 244; *Natale*, 318 F. 3d at 582.

Township cannot be held liable under a theory of *respondeat superior* or vicarious liability.[46] Plaintiff has put forth no evidence that Getz's failure to provide immediate medical assistance resulted from the implementation of any Spring Township policy or practice, as opposed to the exercise of his own judgment regarding the need to secure the area under the unique circumstances presented. Accordingly, the Court will grant summary judgment on the failure to provide prompt medical treatment claim as against Spring Township.

6.      State Law Claim for Negligence

Finally, Plaintiff set forth an allegation of negligence against Officer Getz, alleging that he negligently failed to render aid to Plaintiff when he had a duty to render aid. Under Pennsylvania law, public employees are immune from suit for negligence unless the acts fall within certain categories.[47] The case before the Court does not fall within any of those categories. Accordingly, the negligence claim against Getz must be dismissed.

**B.      Berks County Defendants**

The Berks County Defendants have filed a motion for summary judgment on the single remaining claim against them: the claim of deliberate indifference to a serious medical need/failure to render medical aid in violation of the constitutional prohibition on cruel and unusual punishment. They argue, *inter alia*, that Plaintiff has not set forth sufficient evidence to create a genuine issue of material fact as to the asserted *Monell* claim against the County and its Sheriff.

1.      Timeliness of Response

The Berks County Defendants argue, in their reply brief, that Plaintiff's response to their Motion should be stricken as untimely, and their Motion for Summary Judgment should be

---

[46] *Natale*, 318 F.3d at 583.

[47] 42 Pa. C.S. § 8542(b).

treated as unopposed. Because the Court must reach the merits of even an unopposed motion for summary judgment, and because, in his sur-reply, Plaintiff, who is incarcerated and proceeding *pro se*, presented good cause as to why his response was filed late, the Court will not strike the response but will consider it in ruling on the Motion.

        2.      <u>Sham Affidavit Doctrine</u>

The Berks County Defendants also argue, in their reply brief, that Plaintiff attempts to manufacture a material dispute by setting forth certain facts in his response which are inconsistent with his prior testimony and the record in this case. Defendants ask the Court to disregard these new assertions.

The Court finds that the record evidence and the assertions set forth in Plaintiff's response to the Motion for Summary Judgment are not inconsistent with earlier-presented evidence. For example, in his deposition testimony, Plaintiff indicated that he was in pain while in the holding cell. In his response to the Motion, he stated that the position in which his arms were handcuffed put pressure on his wound and his broken rib, causing pain. Although the latter is a more specific statement, it is not contradictory to or inconsistent with his deposition testimony.

        3.      <u>*Monell* Liability of Berks County and Sheriff Weaknecht</u>

Plaintiff asserts that Berks County and Sheriff Weaknecht, who is responsible for setting and enforcing Sheriff's department policy, should be held liable for violations of his constitutional rights, as, pursuant to certain County policies or practices, County employees failed to provide timely medical care after Plaintiff was discharged from the hospital into the County Sheriff's Department's custody.

Plaintiff was discharged from the hospital, five days after being shot and undergoing

surgery, with a prescription for three pain medications which were to be administered every four hours. Notwithstanding the medical orders, Plaintiff has put forth evidence that he spent more than twelve hours in Berks County Central Booking, where no pain medication could be administered, and was left shackled and in pain despite multiple complaints to County employees. Even after his belated transfer to the prison medical unit, he was not provided with pain medication for another six hours. Plaintiff asserts that there was no legitimate medical (or penological) reason for the delay in providing medical treatment, and thus the delay was unconstitutional.

The Third Circuit recognizes that when a delay in or denial of the provision of adequate medical care results in "unnecessary and wanton infliction of pain," Plaintiff may be able to state a constitutional claim for deliberate indifference to a serious medical need.[48] Here, Moving Defendants do not seek summary judgment on the issue of whether the delay Plaintiff faced before receiving prescribed medical treatment constitutes deliberate indifference to a serious medical need, as that is an issue for the jury. Rather, Defendants move for summary judgment on the issue of the County's and the Sheriff's liability for any constitutional violation that may have resulted from the actions of County or Sheriff's department employees.

As noted above, to establish that Berks County is liable for constitutional violations in a claim pursuant to 42 U.S.C. § 1983, Plaintiff must allege facts supporting the inference that there exists a County policy or custom[49] that when executed or implemented resulted in a violation of § 1983.[50] Similarly, to establish a claim against Sheriff Weaknecht, Plaintiff must establish that the Sheriff directed or personally engaged in conduct which violated his federal rights, that he

---

[48] *Monmouth County Corr. Institutional Inmates v. Lanzaro*, 834 F. 2d 326, 347 (3d Cir. 1987).

[49] *Mulholland v. Cnty. of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (citations omitted) (a policy is "an official proclamation, policy, or edict" and a custom is a "permanent and well-settled" practice).

[50] *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

knew about or acquiesced to the conduct, or that he was responsible for implementing some policy, procedure, or training which caused the claimed constitutional injury.

The policy Plaintiff has identified is the Berks County Sheriff's Department Hospital Detail Policy.[51] He asserts that, pursuant to this policy, he was transported from the hospital to Central Booking, which does not have medical facilities, rather than to the Berks County Prison, which does have medical facilities, and further argues that his transport to Central Booking was one cause of his constitutional injury. The Hospital Detail Policy sets forth procedures and outlines the responsibilities of deputies and shift supervisors for ensuring the security of an arrestee while he or she is hospitalized. It also briefly addresses transportation after an arrestee is medically discharged from the hospital. With regard to transportation, the policy reads:

> 9.      Upon discharge of the prisoner the Deputy shall obtain the required hospital releases and discharge medical information. The Deputy may then transport the prisoner to the cellblock for intake.
> 10.     Upon arrival at the cellblock the Deputy shall notify the Shift Supervisor the [hospital] detail has concluded.[52]

The term "cellblock" is not defined. No other guidance regarding the transportation of arrestees after a hospital discharge is provided in this policy.

Emphasizing the term "may then transport," Defendants argue that the Hospital Detail Policy allows some discretion, and does not *require* a Deputy to take an arrestee to Central Booking if he requires medical treatment that can only be provided in the prison. Therefore, it asks the Court to infer that the policy could not be the source or cause of Plaintiff's injury. However, it is by no means clear whether the policy is discretionary. Furthermore, even assuming that the transportation policy permits a Deputy Sheriff to decide to which facility a prisoner should be transported, the policy provides no guidance as to when and in what

---

[51] Doc. No. 74-1 at 15-16.

[52] Berks County Sheriff's Department Hospital Detail Policy, Doc. No. 76, Exh. C.

circumstances the assigned Deputy should exercise any discretion to transport an ill or injured arrestee to the prison rather than to Central Booking after a hospital discharge. Because it is foreseeable that a recently discharged hospital patient will require follow-up medical treatment, which the County admits cannot be provided in Central Booking, a reasonable jury could infer that the failure of the policy to provide clear directives to Deputy Sheriffs regarding the transportation of arrestees requiring follow-up medical care demonstrates deliberate indifference to serious medical needs. As the jury could also find that Sheriff Weaknecht is responsible for developing or implementing the policies which govern the Sheriff's Department, such as the Hospital Detail Policy, both the Sheriff and the County could be found liable for any constitutional violation.

Plaintiff also implicates the policies and procedures followed at Berks County Central Booking, after his transport there from the hospital. For example, he states that the practice of cuffing arrestees' hands to a chain fastened around their waists caused him pain, as his arms put pressure on and exacerbated the pain from his broken rib and bullet wound. Defendants acknowledge that shackling an arrestee in this manner is the common practice in Central Booking, but in response to an interrogatory, the County indicated that it permits exceptions to the general requirement that arrestees be handcuffed and shackled as Plaintiff was, when those restraints pose a threat to a serious medical condition, and that it trains its employees with regard to this exception. Defendants have not submitted a written policy or training materials for the Court to review.[53] The Court will leave it for the jury to determine whether the (possibly unwritten) exceptions to the shackling policy are sufficient to avoid constitutional injury, if followed, as well as whether deputies are properly trained with regard to circumstances

---

[53] *Id.*

warranting exceptions.

Plaintiff also argues that he was held in Central Booking for twelve hours without regard to his more immediate need for medical treatment pursuant to a policy or practice of holding arrestees in Central Booking until there are a number of prisoners requiring transport from Central Booking to the prison. Defendants do not dispute the existence of such a policy or practice, but argue that Plaintiff cannot establish causation because it is also the policy of the Berks County Sheriff's Department to promptly provide for the evaluation of any arrestee in Central Booking who requests medical attention, and, if medical treatment is necessary, an arrestee can be immediately transported to the hospital or the prison. However, again, Defendant has not provided a copy of such a policy to the Court; the evidence for such a policy is contained in a response to an interrogatory. Therefore, the precise guidance provided by any such policy is unavailable to the Court.

Plaintiff was not provided with an evaluation and was not promptly transported for treatment, despite coming to Central Booking from the hospital with medical orders to provide pain medication every four hours. Because he has put forth evidence that he complained of pain and requested his prescribed pain medication multiple times, the Court finds a material issue of fact as to whether Plaintiff's alleged injury resulted from either an insufficient policy regarding arrestees in need of medical attention or a failure to adequately train employees with regard to the policy.

                4.    <u>Punitive Damages</u>

Plaintiff concedes that his request for punitive damages against Berks County and against Sheriff Weaknecht must be dismissed.

**IV.**    **CONCLUSION**

For the reasons set forth herein, the Spring Township Defendants' Motion for Summary Judgment will be granted as to Plaintiff's excessive force and failure to intervene claims and his state law claims. The Motion will be denied as to Plaintiff's deliberate indifference to serious medical need claims against Officer Getz, but granted as to the *Monell* claims against Spring Township. The Berks County Defendants' Motion for Summary Judgment will be denied, except as to Plaintiff's request for punitive damages. An appropriate order follows.